UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2007-5 ASSET-BACKED CERTIFICATES, SERIES 2007-5,<br><br>Plaintiff,<br>v.<br><br>FIDELITY NATIONAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:19-cv-00241-MMD-WGC<br><br>ORDER |

**I. SUMMARY**

This is a dispute about title insurance coverage that relates to a foreclosure sale by a homeowners association ("HOA"). Before the Court is Fidelity National Title Insurance Company's ("Fidelity") motion to dismiss ("Motion") (ECF No. 5). The Court has reviewed Plaintiff Wells Fargo Bank, N.A.'s ("Wells Fargo") response (ECF No. 7) as well as Fidelity's reply (ECF No. 8). For the following reasons, the Court grants Fidelity's Motion.

**II. BACKGROUND**

The following facts are taken from the Complaint (ECF No. 1) unless otherwise indicated.

Deanna Milton ("Borrower") purchased real property[1] ("Property") on February 27, 1998, with a loan in the amount of $140,000 secured by a first deed of trust ("DOT"). (*Id.* at 2-3.) The DOT identified Premier Trust Deed Services, Inc. as the Trustee and Option One Mortgage Corporation as the lender and beneficiary under the DOT. (*Id.* at 3.) Wells Fargo became the assigned beneficiary under the DOT around November 2016. (*See id.*)

///

---

[1]2605 Starks Way, Reno, NV 89512. (ECF No. 1 at 2.)

Fidelity issued a title insurance policy ("Policy") in connection with the recordation of the DOT. (*Id.*) The Policy identified Option One Mortgage Corporation and/or its assigns as the insured. (*Id.*)

The Property is located within an HOA, and the HOA recorded a notice of delinquent assessment lien against the Property on June 18, 2014 ("HOA Lien"). (*See id.* at 4.) The HOA sold the Property to Entrust Education Trust/Deuk Choi Trustee ("Buyer") at a foreclosure sale ("HOA Sale") on December 17, 2014. (*Id.* at 5.)

Wells Fargo filed a complaint in this Court on December 28, 2016, against Buyer and the HOA. (*Id.* at 6; *see also* Case No. 3:16-cv-00758.) The Court granted summary judgment in favor of Wells Fargo. (ECF No. 1 at 6.)

Wells Fargo's predecessor provided written notice to Fidelity that Buyer claimed an interest in the Property superior to the DOT. (*Id.*) The tender letter requested both indemnity and defense from Fidelity. (*Id.* at 7.) Fidelity denied the claim on the basis that the claim did not fall within the insuring provisions of the Policy and that the HOA Lien was created after the date the Policy issued. (*Id.*) Wells Fargo disputed the denial, but Fidelity maintained the denial in a second, subsequent letter. (*Id.* at 7-8.)

Wells Fargo asserts the following claims against Fidelity: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the implied covenant of good faith and fair dealing; (4) breach of fiduciary duties; and (5) violation of NRS § 686A.310. (*Id.* at 8-13.) Wells Fargo seeks contractual damages, extra-contractual damages including attorneys' fees and costs, and punitive damages. (*Id.* at 13.)

### III.  DISCUSSION

#### A.  Jurisdiction

The parties first dispute whether the Court has subject matter jurisdiction over Wells Fargo's claims. Wells Fargo seeks to invoke the Court's diversity jurisdiction. (*See* ECF No. 1 at 2.) Fidelity argues that the Court lacks subject matter jurisdiction over Wells

///

Fargo's claims because the amount in controversy does not exceed $75,000. (ECF No. 5 at 4-7.) The Court disagrees.

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). Here, Wells Fargo bears the burden of proving that the case is properly in federal court even though Fidelity is the moving party because Wells Fargo is the party invoking the court's jurisdiction. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

"A federal court has jurisdiction over the underlying dispute if the suit is between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs (i.e., diversity jurisdiction)." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (footnote omitted) (citing 28 U.S.C. § 1332(a)). When a plaintiff "originally files in federal court, 'the amount in controversy is determined from the face of the pleadings.'" *Id.* (quoting *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000)). The amount in controversy alleged by the plaintiff (assuming the plaintiff is the proponent of federal jurisdiction) controls as long as the claim is made in good faith. *Id.* (citing *Crum*, 231 F.3d at 1131). "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (quoting *Crum*, 231 F.3d at 1131). "This is called the 'legal certainty' standard, which means a federal court has subject matter jurisdiction unless 'upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount.'" *Id.* (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)).

Fidelity argues that Wells Fargo had not suffered an indemnifiable loss under the Policy at the time Wells Fargo filed the Complaint. (ECF No. 5 at 5; ECF No. 8 at 3.) Wells

Fargo does not dispute this in its response. (*See generally* ECF No. 7; *see also* ECF No. 8 at 3.) Thus, Wells Fargo "must rely on its claim for litigation expenses incurred in defending its interest in the property to meet the jurisdictional minimum." *Wells Fargo Bank, N.A. v. Commonwealth Land Title Ins. Co.*, No. 2:18-cv-00494-APG-BNW, 2019 WL 2062947, at *2 (D. Nev. May 9, 2019).

Wells Fargo seeks contractual damages, extra-contractual damages based on Fidelity's breach of the implied covenant of good faith and fair dealing, attorney's fees and costs, and punitive damages. (ECF No. 1 at 13; ECF No. 7 at 11.) And while Wells Fargo had only accrued about $40,000 of attorney's fees as of September 12, 2019 (ECF No. 7 at 13), punitive damages could exceed $35,000. "'It is well established that punitive damages are part of the amount in controversy in a civil action,' and in Nevada, the court may award punitive damages against an insurer who acts in bad faith." *Flores v. Standard Ins. Co.*, No. 3:09-cv-00501-LRH-RAM, 2010 WL 185949, at *5 (D. Nev. Jan. 15, 2010) (internal citation omitted) (first quoting *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); and then citing NRS § 42.005).

It does not appear to a legal certainty on the face of the Complaint that Wells Fargo cannot recover at least $35,000 in punitive damages. Wells Fargo alleges that Fidelity's conduct was malicious, fraudulent, and oppressive in support of punitive damages. (ECF No. 1 at 11.)

Fidelity argues that Wells Fargo has failed to carry its burden under a preponderance of the evidence standard, but that standard is not applicable here. *See Geographic Expeditions*, 599 F.3d at 1107 (explaining that preponderance standard applies in removal cases as opposed to cases originally filed in federal court). Rather, the Court must accept Wells Fargo's good faith allegations. *Id.* at 1106. Fidelity has not shown that Wells Fargo's allegations were not made in good faith.

Accordingly, the Court rejects Fidelity's argument that the amount in controversy does not exceed $75,000 and finds that it has subject matter jurisdiction over Wells Fargo's claims.

**B.     Breach of Contract**

Fidelity argues that Wells Fargo's claim for breach of contract fails because Wells Fargo's claim is not covered under the Policy. (ECF No. 5 at 7.) The Court agrees.

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

Fidelity argues that the Policy does not provide coverage based on two exclusions: Exclusion 3(d) and Exception 13. (ECF No. 5 at 10-12.) The Court finds that Exclusion 3(d) bars coverage and does not consider the applicability of Exception 13.

Exclusion 3(d) bars coverage for loss or damage by reason of defects or liens created subsequent to the "Date of Policy." (*See* ECF No. 5 at 11.[2]) The Date of Policy here is February 1, 2007. (ECF No. 1-5 at 3.) The defect or lien here (the HOA's delinquent assessment lien) arose after February 1, 2007, because the assessments giving rise to the HOA Lien did not first become due until 2014. (ECF No. 5 at 11; *see also* ECF No. 1 at 4.)

Wells Fargo argues that the HOA Lien was created July 11, 1996—the date that the HOA's Declarations of Covenants, Conditions and Restrictions ("Declaration") were recorded. (ECF No. 7 at 15-16.) The Court finds Wells Fargo's argument unpersuasive. Wells Fargo relies on the version of NRS § 116.3116(5)[3] in effect at the time of the HOA Sale, which transforms "recording of the declaration" into "record notice and perfection of the lien." NRS § 116.3116(5) (2013). According to Wells Fargo, this means that all HOA liens are created on the date the Declaration was recorded, even if the related delinquency occurs years later. This interpretation is unreasonable because the statute plainly states that the lien is created at the time of delinquency: "[t]he association has a lien . . . from the time the construction penalty, assessment or fine becomes due." NRS § 116.3116(1) (2013). Subsection 5 simply relieves the lienholder of the obligation of recording the lien to perfect it. *See Commonwealth*, 2019 WL 2062947, at *4.

Having found that Exclusion 3(d) bars coverage, the Court does not consider whether Exception 13 also bars coverage. Nevertheless, the Court considers whether Endorsement 100 or Endorsement 5 creates coverage despite Exclusion 3(d). The Court finds that these endorsements do not create coverage.

///

---

[2]The Court grants Fidelity's request (ECF No. 5-1) for judicial notice of the jacket containing portions of the Policy for "exclusions" and "conditions and stipulations" because Wells Fargo did not oppose the request.

[3]NRS § 116.3116(9) in the current version of the statute.

Endorsement 100 insures Wells Fargo against loss sustained as a result of the existence of covenants, conditions, or restrictions under which the lien of the mortgage can be subordinated. (*See* ECF No. 1-5 at 7.) Wells Fargo argues that this endorsement creates coverage because Wells Fargo would not have risked losing its DOT but for the existence of the CC&Rs that allowed for the creation of an HOA lien. (ECF No. 7 at 18-19.) The Court disagrees. A change in controlling law—not the CC&Rs—caused Wells Fargo to risk losing its DOT. *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (2014) (finding that an HOA lien constituted a true superpriority lien).

Endorsement 5 insures Wells Fargo against loss or damage sustained by reason of "[t]he priority of any lien for charges and assessments at Date of Policy in favor of any association of homeowners." (*See* ECF No. 1-5 at 11.) Wells Fargo argues again that the HOA Lien existed prior to the Date of Policy based on the 2013 version of NRS § 116.3116(5). (ECF No. 7 at 19-21.) The Court rejects this argument as explained *supra*.

Accordingly, the Court will dismiss Wells Fargo's breach of contract claim.

**C.     Breach of the Implied Covenant**

Wells Fargo's claims for breach of the implied covenant are expressly predicated on Fidelity's purported breach of contract. (*See* ECF No. 1 at 9-11.) For example, Wells Fargo alleges that "Fidelity's breach of contract is a self-serving effort to avoid having to incur what is otherwise likely to be a substantial expense." (ECF No. 1 at 9.) Even though plaintiffs may sometimes recover damages for breach of the implied covenant in the absence of a breach of contract, *see Sonoma Springs Ltd. P'ship v. Fid. & Deposit Co. of Maryland*, No. 3:18-cv-00021-LRH-CBC, 2019 WL 3848790, at *7 (D. Nev. Aug. 14, 2019), Wells Fargo cannot do so here because its claims for breach of the implied covenant are expressly predicated on Fidelity's purported breach of contract.

Accordingly, the Court will dismiss Wells Fargo's claims for breach of the implied covenant without prejudice.

///

///

### D. Breach of Fiduciary Duties

Wells Fargo's claim for breach of fiduciary duties must be dismissed because the Nevada Supreme Court has held that a breach of fiduciary duty in the insurance context is not an independent cause of action. *See Commonwealth*, 2019 WL 2062947, at *6 (quoting *Powers v. U.S. Auto Ass'n*, 962 P. 2d 596, 602 (Nev. 1998)). Rather, "breach of the fiduciary nature of the insurer-insured relationship is part of the duty of good faith and fair dealing." *Id.* (quoting *Powers*, 962 P.2d at 603).

Accordingly, the Court will dismiss Wells Fargo's claim for breach of fiduciary duties.

### E. Violation of NRS § 686A.310

Wells Fargo's allegations regarding Fidelity's purported violation of NRS § 686A.310 are conclusory and devoid of factual support. (*See* ECF No. 1 at 12.) Wells Fargo "merely recites the pertinent statutory language of [NRS § 686A.310] without presenting any" supporting factual allegations. *Patel v. Am. Nat'l Prop. & Cas. Co.*, 367 F. Supp. 3d 1186, 1193 (D. Nev. 2019). These allegations are insufficient to permit the Court to infer more than a possibility of misconduct. *Id.*

Accordingly, the Court will dismiss Wells Fargo's claim for violation of NRS § 686A.310 without prejudice.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

///

///

///

///

///

It is therefore ordered that Fidelity's motion to dismiss (ECF No. 5) is granted.

The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED THIS 29th day of October 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE